(Slip Opinion) OCTOBER TERM, 2012 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## AMERICAN EXPRESS CO. ET AL. *v.* ITALIAN COLORS RESTAURANT ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 12–133. Argued February 27, 2013—Decided June 20, 2013

An agreement between petitioners, American Express and a subsidiary, and respondents, merchants who accept American Express cards, requires all of their disputes to be resolved by arbitration and provides that there "shall be no right or authority for any Claims to be arbitrated on a class action basis." Respondents nonetheless filed a class action, claiming that petitioners violated §1 of the Sherman Act and seeking treble damages for the class under §4 of the Clayton Act. Petitioners moved to compel individual arbitration under the Federal Arbitration Act (FAA), but respondents countered that the cost of expert analysis necessary to prove the antitrust claims would greatly exceed the maximum recovery for an individual plaintiff. The District Court granted the motion and dismissed the lawsuits. The Second Circuit reversed and remanded, holding that because of the prohibitive costs respondents would face if they had to arbitrate, the class-action waiver was unenforceable and arbitration could not proceed. The Circuit stood by its reversal when this Court remanded in light of *Stolt-Nielsen S. A.* v. *AnimalFeeds International Corp.*, 559 U. S. 662, which held that a party may not be compelled to submit to class arbitration absent an agreement to do so.

*Held*: The FAA does not permit courts to invalidate a contractual waiver of class arbitration on the ground that the plaintiff's cost of individually arbitrating a federal statutory claim exceeds the potential recovery. Pp. 3–10.

  (a) The FAA reflects the overarching principle that arbitration is a matter of contract. See *Rent-A-Center, West, Inc.* v. *Jackson*, 561 U. S. ___, ___. Courts must "rigorously enforce" arbitration agreements according to their terms, *Dean Witter Reynolds, Inc.* v. *Byrd*,

470 U. S. 213, 221, even for claims alleging a violation of a federal statute, unless the FAA's mandate has been "'overridden by a contrary congressional command,'" *CompuCredit Corp.* v. *Greenwood*, 565 U. S. ___, ___.  Pp. 3–4.

(b) No contrary congressional command requires rejection of the class-arbitration waiver here.  The antitrust laws do not guarantee an affordable procedural path to the vindication of every claim, see *Rodriguez* v. *United States*, 480 U. S. 522, 525–526, or "evince an intention to preclude a waiver" of class-action procedure, *Mitsubishi Motors Corp.* v. *Soler-Chrysler-Plymouth, Inc.*, 473 U. S. 614, 628.  Nor does congressional approval of Federal Rule of Civil Procedure 23 establish an entitlement to class proceedings for the vindication of statutory rights.  The Rule imposes stringent requirements for certification that exclude most claims, and this Court has rejected the assertion that the class-notice requirement must be dispensed with because the "prohibitively high cost" of compliance would "frustrate [plaintiff's] attempt to vindicate the policies underlying the antitrust" laws, *Eisen* v. *Carlisle & Jacquelin*, 417 U. S. 156, 167–168, 175–176.  Pp. 4–5.

(c) The "effective vindication" exception that originated as dictum in *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U. S. 614, also does not invalidate the instant arbitration agreement.  The exception comes from a desire to prevent "prospective waiver of a party's right to pursue statutory remedies," *id.,* at 637, n. 19; but the fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy.  Cf. *Gilmer* v. *Interstate/Johnson Lane Corp.*, 500 U. S. 20, 32; *Vimar Seguros y Reaseguros, S. A.* v. *M/V Sky Reefer*, 515 U. S. 528, 530, 534.  *AT&T Mobility LLC* v. *Concepcion*, 563 U. S. ___, all but resolves this case.  There, in finding that a law that conditioned enforcement of arbitration on the availability of class procedure interfered with fundamental arbitration attributes, *id.,* at ___, the Court specifically rejected the argument that class arbitration was necessary to prosecute claims "that might otherwise slip through the legal system," *id.,* at ___.  Pp. 5–9.

667 F. 3d 204, reversed.

SCALIA, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, THOMAS, and ALITO, JJ., joined.  THOMAS, J., filed a concurring opinion.  KAGAN, J., filed a dissenting opinion, in which GINSBURG and BREYER, JJ., joined.  SOTOMAYOR, J., took no part in the consideration or decision of the case.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 12–133

AMERICAN EXPRESS COMPANY, ET AL., PETITIONERS *v.* ITALIAN COLORS RESTAURANT ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

[June 20, 2013]

JUSTICE SCALIA delivered the opinion of the Court.

We consider whether a contractual waiver of class arbitration is enforceable under the Federal Arbitration Act when the plaintiff's cost of individually arbitrating a federal statutory claim exceeds the potential recovery.

I

Respondents are merchants who accept American Express cards. Their agreement with petitioners—American Express and a wholly owned subsidiary—contains a clause that requires all disputes between the parties to be resolved by arbitration. The agreement also provides that "[t]here shall be no right or authority for any Claims to be arbitrated on a class action basis." *In re American Express Merchants' Litigation*, 667 F. 3d 204, 209 (CA2 2012).

Respondents brought a class action against petitioners for violations of the federal antitrust laws. According to respondents, American Express used its monopoly power in the market for charge cards to force merchants to accept credit cards at rates approximately 30% higher than

the fees for competing credit cards.[1]  This tying arrange-
ment, respondents said, violated §1 of the Sherman Act.
They sought treble damages for the class under §4 of the
Clayton Act.

Petitioners moved to compel individual arbitration
under the Federal Arbitration Act (FAA), 9 U. S. C. §1
*et seq.*  In resisting the motion, respondents submitted a
declaration from an economist who estimated that the cost
of an expert analysis necessary to prove the antitrust
claims would be "at least several hundred thousand dol-
lars, and might exceed $1 million," while the maximum
recovery for an individual plaintiff would be $12,850, or
$38,549 when trebled.  App. 93.  The District Court granted
the motion and dismissed the lawsuits.  The Court of
Appeals reversed and remanded for further proceedings.
It held that because respondents had established that
"they would incur prohibitive costs if compelled to arbi-
trate under the class action waiver," the waiver was un-
enforceable and the arbitration could not proceed.  *In re
American Express Merchants' Litigation*, 554 F. 3d 300,
315–316 (CA2 2009).

We granted certiorari, vacated the judgment, and re-
manded for further consideration in light of *Stolt-Nielsen
S. A.* v. *AnimalFeeds Int'l Corp.*, 559 U. S. 662 (2010),
which held that a party may not be compelled to submit to
class arbitration absent an agreement to do so.  *American
Express Co.* v. *Italian Colors Restaurant*, 559 U. S. 1103
(2010).  The Court of Appeals stood by its reversal, stating
that its earlier ruling did not compel class arbitration.
*In re American Express Merchants' Litigation*, 634 F. 3d
187, 200 (CA2 2011).  It then *sua sponte* reconsidered its
ruling in light of *AT&T Mobility LLC* v. *Concepcion*, 563

---

[1] A charge card requires its holder to pay the full outstanding balance
at the end of a billing cycle; a credit card requires payment of only a
portion, with the balance subject to interest.

U. S. \_\_\_ (2011), which held that the FAA pre-empted a state law barring enforcement of a class-arbitration waiver. Finding *AT&T Mobility* inapplicable because it addressed pre-emption, the Court of Appeals reversed for the third time. 667 F. 3d, at 213. It then denied rehearing en banc with five judges dissenting. *In re American Express Merchants' Litigation*, 681 F. 3d 139 (CA2 2012). We granted certiorari, 568 U. S. \_\_\_ (2012), to consider the question "[w]hether the Federal Arbitration Act permits courts . . . to invalidate arbitration agreements on the ground that they do not permit class arbitration of a federal-law claim," Pet. for Cert. i.

## II

Congress enacted the FAA in response to widespread judicial hostility to arbitration. See *AT&T Mobility, supra*, at \_\_\_ (slip op., at 4). As relevant here, the Act provides:

> "A written provision in any maritime transaction or contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U. S. C. §2.

This text reflects the overarching principle that arbitration is a matter of contract. See *Rent-A-Center, West, Inc.* v. *Jackson*, 561 U. S. \_\_\_, \_\_\_ (2010) (slip op., at 3). And consistent with that text, courts must "rigorously enforce" arbitration agreements according to their terms, *Dean Witter Reynolds Inc.* v. *Byrd*, 470 U. S. 213, 221 (1985), including terms that "specify *with whom* [the parties] choose to arbitrate their disputes," *Stolt-Nielsen*, *supra*, at 683, and "the rules under which that arbitration will be conducted," *Volt Information Sciences, Inc.* v. *Board of*

*Trustees of Leland Stanford Junior Univ.*, 489 U. S. 468, 479 (1989). That holds true for claims that allege a violation of a federal statute, unless the FAA's mandate has been "'overridden by a contrary congressional command.'" *CompuCredit Corp.* v. *Greenwood*, 565 U. S. ___, ___ (2012) (slip op., at 2–3) (quoting *Shearson/American Express Inc.* v. *McMahon*, 482 U. S. 220, 226 (1987)).

## III

No contrary congressional command requires us to reject the waiver of class arbitration here. Respondents argue that requiring them to litigate their claims individually— as they contracted to do—would contravene the policies of the antitrust laws. But the antitrust laws do not guarantee an affordable procedural path to the vindication of every claim. Congress has taken some measures to facilitate the litigation of antitrust claims—for example, it enacted a multiplied-damages remedy. See 15 U. S. C. §15 (treble damages). In enacting such measures, Congress has told us that it is willing to go, in certain respects, beyond the normal limits of law in advancing its goals of deterring and remedying unlawful trade practice. But to say that Congress must have intended whatever departures from those normal limits advance antitrust goals is simply irrational. "[N]o legislation pursues its purposes at all costs." *Rodriguez* v. *United States*, 480 U. S. 522, 525–526 (1987) (*per curiam*).

The antitrust laws do not "evinc[e] an intention to preclude a waiver" of class-action procedure. *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U. S. 614, 628 (1985). The Sherman and Clayton Acts make no mention of class actions. In fact, they were enacted decades before the advent of Federal Rule of Civil Procedure 23, which was "designed to allow an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano* v. *Yamasaki*,

442 U. S. 682, 700–701 (1979). The parties here agreed to arbitrate pursuant to that "usual rule," and it would be remarkable for a court to erase that expectation.

Nor does congressional approval of Rule 23 establish an entitlement to class proceedings for the vindication of statutory rights. To begin with, it is likely that such an entitlement, invalidating private arbitration agreements denying class adjudication, would be an "abridg[ment]" or modif[ication]" of a "substantive right" forbidden to the Rules, see 28 U. S. C. §2072(b). But there is no evidence of such an entitlement in any event. The Rule imposes stringent requirements for certification that in practice exclude most claims. And we have specifically rejected the assertion that one of those requirements (the class-notice requirement) must be dispensed with because the "prohibitively high cost" of compliance would "frustrate [plaintiff's] attempt to vindicate the policies underlying the antitrust" laws. *Eisen* v. *Carlisle & Jacquelin*, 417 U. S. 156, 166–168, 175–176 (1974). One might respond, perhaps, that federal law secures a nonwaivable *opportunity* to vindicate federal policies by satisfying the procedural strictures of Rule 23 or invoking some other informal class mechanism in arbitration. But we have already rejected that proposition in *AT&T Mobility*, 563 U. S., at ___ (slip op., at 9).

## IV

Our finding of no "contrary congressional command" does not end the case. Respondents invoke a judge-made exception to the FAA which, they say, serves to harmonize competing federal policies by allowing courts to invalidate agreements that prevent the "effective vindication" of a federal statutory right. Enforcing the waiver of class arbitration bars effective vindication, respondents contend, because they have no economic incentive to pursue their antitrust claims individually in arbitration.

The "effective vindication" exception to which respondents allude originated as dictum in *Mitsubishi Motors*, where we expressed a willingness to invalidate, on "public policy" grounds, arbitration agreements that "operat[e] . . . as a prospective waiver of a party's *right to pursue* statutory remedies." 473 U. S*.,* at 637, n. 19 (emphasis added). Dismissing concerns that the arbitral forum was inadequate, we said that "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." *Id.,* at 637. Subsequent cases have similarly asserted the existence of an "effective vindication" exception, see, *e.g., 14 Penn Plaza LLC* v. *Pyett*, 556 U. S. 247, 273–274 (2009); *Gilmer* v. *Interstate/Johnson Lane Corp.*, 500 U. S. 20, 28 (1991), but have similarly declined to apply it to invalidate the arbitration agreement at issue.[2]

And we do so again here. As we have described, the exception finds its origin in the desire to prevent "prospective waiver of a party's *right to pursue* statutory remedies," *Mitsubishi Motors*, *supra*, at 637, n. 19 (emphasis added). That would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights. And it would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable. See

—————

[2] Contrary to the dissent's claim, *post,* at 8–9, and n. 3 (opinion of KAGAN, J.), the Court in *Mitsubishi Motors* did not hold that federal statutory claims are subject to arbitration so long as the claimant may effectively vindicate his rights in the arbitral forum. The Court expressly stated that, "at this stage in the proceedings," it had "no occasion to speculate" on whether the arbitration agreement's potential deprivation of a claimant's right to pursue federal remedies may render that agreement unenforceable. 473 U. S., at 637, n. 19. Even the Court of Appeals in this case recognized the relevant language in *Mitsubishi Motors* as dicta. *In re American Express Merchants' Litigation*, 667 F. 3d 204, 214 (CA2 2012).

*Green Tree Financial Corp.-Ala.* v. *Randolph*, 531 U. S. 79, 90 (2000) ("It may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights"). But the fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy. See 681 F. 3d, at 147 (Jacobs, C. J., dissenting from denial of rehearing en banc).[3] The class-action waiver merely limits arbitration to the two contracting parties. It no more eliminates those parties' right to pursue their statutory remedy than did federal law before its adoption of the class action for legal relief in 1938, see Fed. Rule Civ. Proc. 23, 28 U. S. C., p. 864 (1938 ed., Supp V); 7A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §1752, p. 18 (3d ed. 2005). Or, to put it differently, the individual suit that was considered adequate to assure "effective vindication" of a federal right before adoption of class-action procedures did not suddenly become "ineffective vindication" upon their adoption.[4]

―――――――――

[3] The dissent contends that a class-action waiver may deny a party's right to pursue statutory remedies in the same way as a clause that bars a party from presenting economic testimony. See *post,* at 3, 9. That is a false comparison for several reasons: To begin with, it is not a given that such a clause would constitute an impermissible waiver; we have never considered the point. But more importantly, such a clause, assuming it makes vindication of the claim impossible, makes it impossible not just as a class action but even as an individual claim.

[4] Who can disagree with the dissent's assertion that "the effective-vindication rule asks about the world today, not the world as it might have looked when Congress passed a given statute"? *Post,* at 12. But time does not change the meaning of effectiveness, making ineffective vindication today what was effective vindication in the past. The dissent also says that the agreement bars other forms of cost sharing— existing before the Sherman Act—that could provide effective vindication. See *post*, at 11–12, and n. 5. Petitioners denied that, and that is not what the Court of Appeals decision under review here held. It held that, because other forms of cost sharing were not economically feasible

A pair of our cases brings home the point. In *Gilmer*, *supra*, we had no qualms in enforcing a class waiver in an arbitration agreement even though the federal statute at issue, the Age Discrimination in Employment Act, expressly permitted collective actions. We said that statutory permission did "'not mean that individual attempts at conciliation were intended to be barred.'" *Id.,* at 32. And in *Vimar Seguros y Reaseguros, S. A.* v. *M/V Sky Reefer*, 515 U. S. 528 (1995), we held that requiring arbitration in a foreign country was compatible with the federal Carriage of Goods by Sea Act. That legislation prohibited any agreement "'relieving'" or "'lessening'" the liability of a carrier for damaged goods, *id.,* at 530, 534 (quoting 46 U. S. C. App. §1303(8) (1988 ed.))—which is close to codification of an "effective vindication" exception. The Court rejected the argument that the "inconvenience and costs of proceeding" abroad "lessen[ed]" the defendants' liability, stating that "[i]t would be unwieldy and unsupported by the terms or policy of the statute to require courts to proceed case by case to tally the costs and burdens to particular plaintiffs in light of their means, the size of their claims, and the relative burden on the carrier." 515 U. S., at 532, 536. Such a "tally[ing] [of] the costs and burdens" is precisely what the dissent would impose upon federal courts here.

Truth to tell, our decision in *AT&T Mobility* all but resolves this case. There we invalidated a law conditioning enforcement of arbitration on the availability of class procedure because that law "interfere[d] with fundamental

_____

("the *only economically feasible* means for . . . enforcing [respondents'] statutory rights is *via a class action*"), the class-action waiver was unenforceable. 667 F. 3d, at 218 (emphasis added). (The dissent's assertion to the contrary cites not the opinion on appeal here, but an earlier opinion that was vacated. See *In re American Express Merchants' Litigation*, 554 F. 3d 300 (CA2 2009), vacated and remanded, 559 U. S. 1103 (2010).) That is the conclusion we reject.

attributes of arbitration." 563 U. S., at \_\_\_ (slip op., at 9). "[T]he switch from bilateral to class arbitration," we said, "sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." *Id.,* at \_\_\_ (slip op., at 14). We specifically rejected the argument that class arbitration was necessary to prosecute claims "that might otherwise slip through the legal system." *Id.,* at \_\_\_ (slip op., at 17).[5]

\*　　\*　　\*

The regime established by the Court of Appeals' decision would require—before a plaintiff can be held to contractually agreed bilateral arbitration—that a federal court determine (and the parties litigate) the legal requirements for success on the merits claim-by-claim and theory-by-theory, the evidence necessary to meet those requirements, the cost of developing that evidence, and the damages that would be recovered in the event of success. Such a preliminary litigating hurdle would undoubtedly destroy the prospect of speedy resolution that arbitration in general and bilateral arbitration in particular was meant to secure. The FAA does not sanction such a judicially created superstructure.

The judgment of the Court of Appeals is reversed.

─────────

[5] In dismissing *AT&T Mobility* as a case involving pre-emption and not the effective-vindication exception, the dissent ignores what that case established—that the FAA's command to enforce arbitration agreements trumps any interest in ensuring the prosecution of low-value claims. The latter interest, we said, is "unrelated" to the FAA. 563 U. S., at \_\_\_ (slip op., at 17). Accordingly, the FAA does, contrary to the dissent's assertion, see *post,* at 5, favor the absence of litigation when that is the consequence of a class-action waiver, since its "'principal purpose'" is the enforcement of arbitration agreements according to their terms. 563 U. S., at \_\_\_ (slip op., at 9–10) (quoting *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior Univ.,* 489 U. S. 468, 487 (1989)).

*It is so ordered.*

JUSTICE SOTOMAYOR took no part in the consideration or decision of this case.

# SUPREME COURT OF THE UNITED STATES

_____

No. 12–133

_____

## AMERICAN EXPRESS COMPANY, ET AL., PETITIONERS *v.* ITALIAN COLORS RESTAURANT ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SECOND CIRCUIT

[June 20, 2013]

JUSTICE THOMAS, concurring.

I join the Court's opinion in full. I write separately to note that the result here is also required by the plain meaning of the Federal Arbitration Act. In *AT&T Mobility LLC* v. *Concepcion*, 563 U. S. ___ (2011), I explained that "the FAA requires that an agreement to arbitrate be enforced unless a party successfully challenges the formation of the arbitration agreement, such as by proving fraud or duress." *Id.,* at ___ (concurring opinion) (slip op., at 1–2). In this case, Italian Colors makes two arguments to support its conclusion that the arbitration agreement should not be enforced. First, it contends that enforcing the arbitration agreement "would contravene the policies of the antitrust laws." *Ante,* at 4. Second, it contends that a court may "invalidate agreements that prevent the 'effective vindication' of a federal statutory right." *Ante,* at 6. Neither argument "concern[s] whether the contract was properly made," *Concepcion, supra,* at ___ (THOMAS, J., concurring) (slip op., at 5–6). Because Italian Colors has not furnished "grounds . . . for the revocation of any contract," 9 U. S. C. §2, the arbitration agreement must be enforced. Italian Colors voluntarily entered into a contract containing a bilateral arbitration provision. It cannot now escape its obligations merely because the claim it wishes to bring might be economically infeasible.

# SUPREME COURT OF THE UNITED STATES

―――――――

## No. 12–133

―――――――

## AMERICAN EXPRESS COMPANY, ET AL., PETITIONERS *v.* ITALIAN COLORS RESTAURANT ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

[June 20, 2013]

JUSTICE KAGAN, with whom JUSTICE GINSBURG and JUSTICE BREYER join, dissenting.

Here is the nutshell version of this case, unfortunately obscured in the Court's decision. The owner of a small restaurant (Italian Colors) thinks that American Express (Amex) has used its monopoly power to force merchants to accept a form contract violating the antitrust laws. The restaurateur wants to challenge the allegedly unlawful provision (imposing a tying arrangement), but the same contract's arbitration clause prevents him from doing so. That term imposes a variety of procedural bars that would make pursuit of the antitrust claim a fool's errand. So if the arbitration clause is enforceable, Amex has insulated itself from antitrust liability—even if it has in fact violated the law. The monopolist gets to use its monopoly power to insist on a contract effectively depriving its victims of all legal recourse.

And here is the nutshell version of today's opinion, admirably flaunted rather than camouflaged: Too darn bad.

That answer is a betrayal of our precedents, and of federal statutes like the antitrust laws. Our decisions have developed a mechanism—called the effective-vindication rule—to prevent arbitration clauses from choking off a plaintiff's ability to enforce congressionally

created rights. That doctrine bars applying such a clause when (but only when) it operates to confer immunity from potentially meritorious federal claims. In so doing, the rule reconciles the Federal Arbitration Act (FAA) with all the rest of federal law—and indeed, promotes the most fundamental purposes of the FAA itself. As applied here, the rule would ensure that Amex's arbitration clause does not foreclose Italian Colors from vindicating its right to redress antitrust harm.

The majority barely tries to explain why it reaches a contrary result. It notes that we have not decided this exact case before—neglecting that the principle we have established fits this case hand in glove. And it concocts a special exemption for class-arbitration waivers—ignoring that this case concerns much more than that. Throughout, the majority disregards our decisions' central tenet: An arbitration clause may not thwart federal law, irrespective of exactly how it does so. Because the Court today prevents the effective vindication of federal statutory rights, I respectfully dissent.

I

Start with an uncontroversial proposition: We would refuse to enforce an exculpatory clause insulating a company from antitrust liability—say, "Merchants may bring no Sherman Act claims"—even if that clause were contained in an arbitration agreement. See *ante*, at 6. Congress created the Sherman Act's private cause of action not solely to compensate individuals, but to promote "the public interest in vigilant enforcement of the antitrust laws." *Lawlor* v. *National Screen Service Corp.*, 349 U. S. 322, 329 (1955). Accordingly, courts will not enforce a prospective waiver of the right to gain redress for an antitrust injury, whether in an arbitration agreement or any other contract. See *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U. S. 614, 637, and n. 19

(1985). The same rule applies to other important federal statutory rights. See *14 Penn Plaza LLC* v. *Pyett*, 556 U. S. 247, 273 (2009) (Age Discrimination in Employment Act); *Brooklyn Savings Bank* v. *O'Neil*, 324 U. S. 697, 704 (1945) (Fair Labor Standards Act). But its necessity is nowhere more evident than in the antitrust context. Without the rule, a company could use its monopoly power to protect its monopoly power, by coercing agreement to contractual terms eliminating its antitrust liability.

If the rule were limited to baldly exculpatory provisions, however, a monopolist could devise numerous ways around it. Consider several alternatives that a party drafting an arbitration agreement could adopt to avoid antitrust liability, each of which would have the identical effect. On the front end: The agreement might set outlandish filing fees or establish an absurd (*e.g.*, one-day) statute of limitations, thus preventing a claimant from gaining access to the arbitral forum. On the back end: The agreement might remove the arbitrator's authority to grant meaningful relief, so that a judgment gets the claimant nothing worthwhile. And in the middle: The agreement might block the claimant from presenting the kind of proof that is necessary to establish the defendant's liability—say, by prohibiting any economic testimony (good luck proving an antitrust claim without that!). Or else the agreement might appoint as an arbitrator an obviously biased person—say, the CEO of Amex. The possibilities are endless—all less direct than an express exculpatory clause, but no less fatal. So the rule against prospective waivers of federal rights can work only if it applies not just to a contract clause explicitly barring a claim, but to others that operate to do so.

And sure enough, our cases establish this proposition: An arbitration clause will not be enforced if it prevents the effective vindication of federal statutory rights, however it achieves that result. The rule originated in *Mitsubishi*,

where we held that claims brought under the Sherman Act
and other federal laws are generally subject to arbitration.
473 U. S., at 628.  By agreeing to arbitrate such a claim,
we explained, "a party does not forgo the substantive
rights afforded by the statute; it only submits to their
resolution in an arbitral, rather than a judicial, forum."
*Ibid.*  But crucial to our decision was a limiting principle,
designed to safeguard federal rights: An arbitration clause
will be enforced only "so long as the prospective litigant
effectively may vindicate its statutory cause of action in
the arbitral forum."  *Id.,* at 637.  If an arbitration provi-
sion "operated . . . as a prospective waiver of a party's
right to pursue statutory remedies," we emphasized, we
would "condemn[]" it.  *Id.,* at 637, n. 19.  Similarly, we
stated that such a clause should be "set[] aside" if "pro-
ceedings in the contractual forum will be so gravely diffi-
cult" that the claimant "will for all practical purposes be
deprived of his day in court."  *Id.,* at 632 (internal quota-
tion marks omitted).  And in the decades since *Mitsubishi*,
we have repeated its admonition time and again, instruct-
ing courts not to enforce an arbitration agreement that
effectively (even if not explicitly) forecloses a plaintiff from
remedying the violation of a federal statutory right.  See
*Gilmer* v. *Interstate/Johnson Lane Corp.*, 500 U. S. 20, 28
(1991); *Vimar Seguros y Reaseguros, S. A.* v. *M/V Sky
Reefer*, 515 U. S. 528, 540 (1995); *14 Penn Plaza*, 556 U. S.,
at 266, 273–274.

  Our decision in *Green Tree Financial Corp.-Ala.* v. *Ran-
dolph*, 531 U. S. 79 (2000), confirmed that this principle
applies when an agreement thwarts federal law by making
arbitration prohibitively expensive.  The plaintiff there
(seeking relief under the Truth in Lending Act) argued
that an arbitration agreement was unenforceable be-
cause it "create[d] a risk" that she would have to "bear
prohibitive arbitration costs" in the form of high filing and
administrative fees.  *Id.,* at 90 (internal quotation marks

omitted). We rejected that contention, but not because we doubted that such fees could prevent the effective vindication of statutory rights. To the contrary, we invoked our rule from *Mitsubishi*, making clear that it applied to the case before us. See 538 U. S., at 90. Indeed, we added a burden of proof: "[W]here, as here," we held, a party asserting a federal right "seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.,* at 92. Randolph, we found, had failed to meet that burden: The evidence she offered was "too speculative." *Id.,* at 91. But even as we dismissed Randolph's suit, we reminded courts to protect against arbitration agreements that make federal claims too costly to bring.

Applied as our precedents direct, the effective-vindication rule furthers the purposes not just of laws like the Sherman Act, but of the FAA itself. That statute reflects a federal policy favoring actual arbitration—that is, arbitration as a streamlined "method of resolving disputes," not as a foolproof way of killing off valid claims. *Rodriguez de Quijas* v. *Shearson/American Express, Inc.*, 490 U. S. 477, 481 (1989). Put otherwise: What the FAA prefers to litigation is arbitration, not *de facto* immunity. The effective-vindication rule furthers the statute's goals by ensuring that arbitration remains a real, not faux, method of dispute resolution. With the rule, companies have good reason to adopt arbitral procedures that facilitate efficient and accurate handling of complaints. Without it, companies have every incentive to draft their agreements to extract backdoor waivers of statutory rights, making arbitration unavailable or pointless. So down one road: More arbitration, better enforcement of federal statutes. And down the other: Less arbitration, poorer enforcement of federal statutes. Which would you prefer? Or still more aptly: Which do you think Congress

would?

The answer becomes all the more obvious given the limits we have placed on the rule, which ensure that it does not diminish arbitration's benefits. The rule comes into play only when an agreement "operate[s] . . . as a prospective waiver"—that is, forecloses (not diminishes) a plaintiff's opportunity to gain relief for a statutory violation. *Mitsubishi*, 473 U. S., at 637, n. 19. So, for example, *Randolph* assessed whether fees in arbitration would be "prohibitive" (not high, excessive, or extravagant). 531 U. S., at 90. Moreover, the plaintiff must make that showing through concrete proof: "[S]peculative" risks, "unfounded assumptions," and "unsupported statements" will not suffice. *Id.,* at 90–91, and n. 6. With the inquiry that confined and the evidentiary requirements that high, courts have had no trouble assessing the matters the rule makes relevant. And for almost three decades, courts have followed our edict that arbitration clauses must usually prevail, declining to enforce them in only rare cases. See Brief for United States as *Amicus Curiae* 26–27. The effective-vindication rule has thus operated year in and year out without undermining, much less "destroy[ing]," the prospect of speedy dispute resolution that arbitration secures. *Ante*, at 9.

And this is just the kind of case the rule was meant to address. Italian Colors, as I have noted, alleges that Amex used its market power to impose a tying arrangement in violation of the Sherman Act. The antitrust laws, all parties agree, provide the restaurant with a cause of action and give it the chance to recover treble damages. Here, that would mean Italian Colors could take home up to $38,549. But a problem looms. As this case comes to us, the evidence shows that Italian Colors cannot prevail in arbitration without an economic analysis defining the relevant markets, establishing Amex's monopoly power, showing anticompetitive effects, and measuring damages.

And that expert report would cost between several hundred thousand and one million dollars.[1]  So the expense involved in proving the claim in arbitration is ten times what Italian Colors could hope to gain, even in a best-case scenario.  That counts as a "prohibitive" cost, in *Randolph*'s terminology, if anything does.  No rational actor would bring a claim worth tens of thousands of dollars if doing so meant incurring costs in the hundreds of thousands.

An arbitration agreement could manage such a mismatch in many ways, but Amex's disdains them all.  As the Court makes clear, the contract expressly prohibits class arbitration.  But that is only part of the problem.[2] The agreement also disallows any kind of joinder or consolidation of claims or parties.  And more: Its confidentiality provision prevents Italian Colors from informally arranging with other merchants to produce a common expert report.  And still more: The agreement precludes any shifting of costs to Amex, even if Italian Colors prevails.  And beyond all that: Amex refused to enter into any stipulations that would obviate or mitigate the need for

————————

[1] The evidence relating to these costs comes from an affidavit submitted by an economist experienced in proving similar antitrust claims. The Second Circuit found that Amex "ha[d] brought no serious challenge" to that factual showing.  See, *e.g.,* 667 F. 3d 204, 210 (2012). And in this Court, Amex conceded that Italian Colors would need an expert economic report to prevail in arbitration.  See Tr. of Oral Arg. 15.  Perhaps that is not really true.  A hallmark of arbitration is its use of procedures tailored to the type of dispute and amount in controversy; so arbitrators might properly decline to demand such a rigorous evidentiary showing in small antitrust cases.  But that possibility cannot disturb the factual premise on which this case comes to us, and which the majority accepts: that Italian Colors's tying claim is an ordinary kind of antitrust claim; and that it is worth about a tenth the cost of arbitration.

[2] The majority contends that the class-action waiver is the only part we should consider.  See *ante*, at 7–8, n. 4.  I explain below why that assertion is wrong.  See *infra*, at 11–12.

the economic analysis.  In short, the agreement as applied
in this case cuts off not just class arbitration, but any
avenue for sharing, shifting, or shrinking necessary costs.
Amex has put Italian Colors to this choice: Spend way,
way, way more money than your claim is worth, or relin-
quish your Sherman Act rights.

So contra the majority, the court below got this case
right.  Italian Colors proved what the plaintiff in *Ran-
dolph* could not—that a standard-form agreement, taken
as a whole, renders arbitration of a claim "prohibitively
expensive."  531 U. S., at 92.  The restaurant thus estab-
lished that the contract "operate[s] . . . as a prospective
waiver," and prevents the "effective[] . . . vindicat[ion]" of
Sherman Act rights.  *Mitsubishi*, 473 U. S., at 637, and
n. 19.  I would follow our precedents and decline to compel
arbitration.

## II

The majority is quite sure that the effective-vindication
rule does not apply here, but has precious little to say
about why.  It starts by disparaging the rule as having
"originated as dictum."  *Ante,* at 6.  But it does not rest on
that swipe, and for good reason.  As I have explained, see
*supra,* at 3–4, the rule began as a core part of *Mitsubishi*:
We held there that federal statutory claims are subject to
arbitration "*so long as*" the claimant "effectively may
vindicate its [rights] in the arbitral forum."  473 U. S., at
637 (emphasis added).  The rule thus served as an essen-
tial condition of the decision's holding.[3]  And in *Randolph*,

---

[3] The majority is dead wrong when it says that *Mitsubishi* reserved
judgment on "whether the arbitration agreement's potential depriva-
tion of a claimant's right to pursue federal remedies may render that
agreement unenforceable."  *Ante*, at 6, n. 2.  What the *Mitsubishi* Court
had "no occasion to speculate on" was whether a particular agreement
*in fact* eliminated the claimant's federal rights.  473 U. S., at 673, n. 19.
But we stated expressly that if the agreement did so (as Amex's does),

we provided a standard for applying the rule when a claimant alleges "prohibitive costs" ("Where, as here," etc., see *supra,* at 5), and we then applied that standard to the parties before us. So whatever else the majority might think of the effective-vindication rule, it is not dictum.

The next paragraph of the Court's decision (the third of Part IV) is the key: It contains almost the whole of the majority's effort to explain why the effective-vindication rule does not stop Amex from compelling arbitration. The majority's first move is to describe *Mitsubishi* and *Randolph* as covering only discrete situations: The rule, the majority asserts, applies to arbitration agreements that eliminate the "right to pursue statutory remedies" by "forbidding the assertion" of the right (as addressed in *Mitsubishi*) or imposing filing and administrative fees "so high as to make access to the forum impracticable" (as addressed in *Randolph*). *Ante,* at 6 (emphasis deleted; internal quotation marks omitted). Those cases are not this case, the majority says: Here, the agreement's provisions went to the possibility of "*proving* a statutory remedy." *Ante,* at 7.

But the distinction the majority proffers, which excludes problems of proof, is one *Mitsubishi* and *Randolph* (and our decisions reaffirming them) foreclose. Those decisions establish what in some quarters is known as a principle: When an arbitration agreement prevents the effective vindication of federal rights, a party may go to court. That principle, by its nature, operates in diverse circumstances—not just the ones that happened to come before the Court. See *supra,* at 3–4. It doubtless covers the baldly exculpatory clause and prohibitive fees that the majority acknowledges would preclude an arbitration agreement's enforcement. But so too it covers the world of other provisions a clever drafter might devise to scuttle even the most

we would invalidate it. *Ibid.*; see *supra,* at 4.

meritorious federal claims. Those provisions might deny
entry to the forum in the first instance. Or they might
deprive the claimant of any remedy. Or they might pre-
vent the claimant from offering the necessary proof to
prevail, as in my "no economic testimony" hypothetical—
and in the actual circumstances of this case. See *supra,* at
3. The variations matter not at all. Whatever the precise
mechanism, each "operate[s] . . . as a prospective waiver of
a party's [federal] right[s]"—and so confers immunity on a
wrongdoer. *Mitsubishi*, 473 U. S., at 637, n. 19. And that
is what counts under our decisions.[4]

Nor can the majority escape the principle we have estab-
lished by observing, as it does at one point, that Amex's
agreement merely made arbitration "not worth the ex-
pense." *Ante*, at 7. That suggestion, after all, runs smack
into *Randolph*, which likewise involved an allegation that
arbitration, as specified in a contract, "would be prohibi-
tively expensive." 531 U. S., at 92. Our decision there
made clear that a provision raising a plaintiff's costs could
foreclose consideration of federal claims, and so run afoul
of the effective-vindication rule. The expense at issue in
*Randolph* came from a filing fee combined with a per-diem
payment for the arbitrator. But nothing about those
particular costs is distinctive; and indeed, a rule confined
to them would be weirdly idiosyncratic. Not surprisingly,
then, *Randolph* gave no hint of distinguishing among the
different ways an arbitration agreement can make a claim

––––––––––

[4] *Gilmer* and *Vimar Seguros*, which the majority relies on, see *ante*, at
8, fail to advance its argument. The plaintiffs there did not claim, as
Italian Colors does, that an arbitration clause altogether precluded
them from vindicating their federal rights. They averred only that
arbitration would be less convenient or effective than a proceeding in
court. See *Gilmer* v. *Interstate/Johnson Lane Corp.*, 500 U. S. 20, 31–
32 (1991); *Vimar Seguros y Reaseguros, S. A.* v. *M/V Sky Reefer*, 515
U. S. 528, 533 (1995). As I have explained, that kind of showing does
not meet the effective-vindication rule's high bar. See *supra,* at 6.

too costly to bring. Its rationale applies whenever an agreement makes the vindication of federal claims impossibly expensive—whether by imposing fees or proscribing cost-sharing or adopting some other device.

That leaves the three last sentences in the majority's core paragraph. Here, the majority conjures a special reason to exclude "class-action waiver[s]" from the effective-vindication rule's compass. *Ante,* at 7–8, and n. 4. Rule 23, the majority notes, became law only in 1938—decades after the Sherman Act. The majority's conclusion: If federal law in the interim decades did not eliminate a plaintiff's rights under that Act, then neither does this agreement.

But that notion, first of all, rests on a false premise: that this case is only about a class-action waiver. See *ante*, at 7, n. 4 (confining the case to that issue). It is not, and indeed could not sensibly be. The effective-vindication rule asks whether an arbitration agreement *as a whole* precludes a claimant from enforcing federal statutory rights. No single provision is properly viewed in isolation, because an agreement can close off one avenue to pursue a claim while leaving others open. In this case, for example, the agreement could have prohibited class arbitration without offending the effective-vindication rule *if* it had provided an alternative mechanism to share, shift, or reduce the necessary costs. The agreement's problem is that it bars not just class actions, but also all mechanisms—many existing long before the Sherman Act, if that matters—for joinder or consolidation of claims, informal coordination among individual claimants, or amelioration of arbitral expenses. See *supra,* at 7. And contrary to the majority's assertion, the Second Circuit well understood that point: It considered, for example, whether Italian Colors could shift expert expenses to Amex if its claim prevailed (no) or could join with merchants bringing similar claims to produce a common expert report (no again).

See 554 F. 3d 300, 318 (2009).  It is only in this Court that the case has become strangely narrow, as the majority stares at a single provision rather than considering, in the way the effective-vindication rule demands, how the entire contract operates.[5]

In any event, the age of the relevant procedural mechanisms (whether class actions or any other) does not matter, because the effective-vindication rule asks about the world today, not the world as it might have looked when Congress passed a given statute.  Whether a particular procedural device preceded or post-dated a particular statute, the question remains the same: Does the arbitration agreement foreclose a party—right now—from effectively vindicating the substantive rights the statute provides?  This case exhibits a whole raft of changes since Congress passed the Sherman Act, affecting both parties to the dispute—not just new procedural rules (like Rule 23), but also new evidentiary requirements (like the demand here for an expert report) and new contract provisions affecting arbitration (like this agreement's confidentiality clause).  But what has stayed the same is this: Congress's intent that antitrust plaintiffs should be able to enforce their rights free of any prior waiver.  See *supra,* at 2–3; *Mitsubishi,* 473 U. S., at 637, n. 19.  The effective-vindication rule carries out that purpose by ensuring that

---

[5] In defense of this focus, the majority quotes the Second Circuit as concluding that "the *only economically feasible* means" for Italian Colors to enforce its statutory rights "is via a class action."  *Ante*, at 7–8, n. 4 (quoting 667 F. 3d, at 218; internal quotation marks omitted; emphasis added by the Court).  But the Court of Appeals reached that conclusion only after finding that the agreement prohibited all *other* forms of cost-sharing and cost-shifting.  See 554 F. 3d 300, 318 (2009).  (That opinion was vacated on other grounds, but its analysis continued to inform—indeed, was essential to—the Second Circuit's final decision in the case.  See 667 F. 3d, at 218.)  The Second Circuit therefore did exactly what the majority refuses to do—look to the agreement as a whole to determine whether it permits the vindication of federal rights.

any arbitration agreement operating as such a waiver is unenforceable. And that requires courts to determine in the here and now—rather than in ye olde glory days— whether an agreement's provisions foreclose even meritorious antitrust claims.

Still, the majority takes one last stab: "Truth to tell," it claims, *AT&T Mobility LLC* v. *Concepcion*, 563 U. S. \_\_\_ (2011), "all but resolves this case." *Ante,* at 8. In that decision, the majority recounts, this Court held that the FAA preempted a state "law conditioning enforcement of arbitration on the availability of class procedure." *Ibid.*; see 563 U. S., at \_\_\_ (slip op., at 9). According to the majority, that decision controls here because "[w]e specifically rejected the argument that class arbitration was necessary." *Ante*, at 9.

Where to begin? Well, maybe where I just left off: Italian Colors is not claiming that a class action is necessary—only that it have *some* means of vindicating a meritorious claim. And as I have shown, non-class options abound. See *supra,* at 11. The idea that *AT&T Mobility* controls here depends entirely on the majority's view that this case is "class action or bust." Were the majority to drop that pretense, it could make no claim for *AT&T Mobility*'s relevance.

And just as this case is not about class actions, *AT&T Mobility* was not—and could not have been—about the effective-vindication rule. Here is a tip-off: *AT&T Mobility* nowhere cited our effective-vindication precedents. That was so for two reasons. To begin with, the state law in question made class-action waivers unenforceable even when a party *could* feasibly vindicate her claim in an individual arbitration. The state rule was designed to preserve the broad-scale "deterrent effects of class actions," not merely to protect a particular plaintiff's right to assert her own claim. 563 U. S., at \_\_\_ (slip op., at 3). Indeed, the Court emphasized that the complaint in that

case was "most unlikely to go unresolved" because AT&T's agreement contained a host of features ensuring that "aggrieved customers who filed claims would be essentially guaranteed to be made whole." *Id.,* at ___ (slip op., at 17–18) (internal quotation marks and brackets omitted). So the Court professed that *AT&T Mobility* did not implicate the only thing (a party's ability to vindicate a meritorious claim) this case involves.

And if that is not enough, *AT&T Mobility* involved a *state* law, and therefore could not possibly implicate the effective-vindication rule. When a state rule allegedly conflicts with the FAA, we apply standard preemption principles, asking whether the state law frustrates the FAA's purposes and objectives. If the state rule does so— as the Court found in *AT&T Mobility*—the Supremacy Clause requires its invalidation. We have no earthly interest (quite the contrary) in vindicating that law. Our effective-vindication rule comes into play only when the FAA is alleged to conflict with another *federal* law, like the Sherman Act here. In that all-federal context, one law does not automatically bow to the other, and the effective-vindication rule serves as a way to reconcile any tension between them. Again, then, *AT&T Mobility* had no occasion to address the issue in this case. The relevant decisions are instead *Mitsubishi* and *Randolph*.

\*    \*    \*

The Court today mistakes what this case is about. To a hammer, everything looks like a nail. And to a Court bent on diminishing the usefulness of Rule 23, everything looks like a class action, ready to be dismantled. So the Court does not consider that Amex's agreement bars not just class actions, but "other forms of cost-sharing . . . that could provide effective vindication." *Ante*, at 7, n. 4. In short, the Court does not consider—and does not decide— Italian Colors's (and similarly situated litigants') actual

KAGAN, J., dissenting

argument about why the effective-vindication rule precludes this agreement's enforcement.

As a result, Amex's contract will succeed in depriving Italian Colors of any effective opportunity to challenge monopolistic conduct allegedly in violation of the Sherman Act. The FAA, the majority says, so requires. Do not be fooled. Only the Court so requires; the FAA was never meant to produce this outcome. The FAA conceived of arbitration as a "method of *resolving* disputes"—a way of using tailored and streamlined procedures to facilitate redress of injuries. *Rodriguez de Quijas*, 490 U. S., at 481 (emphasis added). In the hands of today's majority, arbitration threatens to become more nearly the opposite—a mechanism easily made to block the vindication of meritorious federal claims and insulate wrongdoers from liability. The Court thus undermines the FAA no less than it does the Sherman Act and other federal statutes providing rights of action. I respectfully dissent.