CHIN, J.,
Concurring and Dissenting. — I agree with the majority that, under the high court’s decision in AT&T Mobility LLC v. Concepcion (2011) 563 U.S. 333 [179 L.Ed.2d 742, 131 S.Ct. 1740] (Concepcion), the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) requires enforcement of the class arbitration waiver in the contract between plaintiff Gil Sanchez and defendant Valencia Holding Company, LLC (Valencia). I also agree with the majority that Sanchez has failed to carry his burden of establishing that the arbitration agreement in that contract is unconscionable. However, as explained below, *925 my analysis of these issues differs from the majority’s in several respects, and I do not endorse all of the majority’s reasoning. Therefore, I concur only in the judgment.
Factual and Procedural Background
On August 8, 2008, Sanchez went to Valencia’s Mercedes-Benz dealership to shop for a certified preowned car. In response to his inquiry, a sales representative showed him a 2006 Mercedes-Benz S500V with an advertised price of approximately $48,000. After negotiations regarding various terms of the purchase, Sanchez signed a contract entitled “RETAIL INSTALLMENT SALE CONTRACT — SIMPLE FINANCE CHARGE,” which specified the total amount financed as $47,032.99. This amount included a price for the car of approximately $39,800, sales tax of approximately $3,330, a service contract price of $3,700, a cash down payment of $15,000, and a net trade-in amount for Sanchez’s 2004 Cadillac of -$14,800 (reflecting the amount Sanchez still owed on the car ($20,800) offset by its value ($6,000)).
Sanchez later filed a class action against Valencia asserting violations of the Consumers Legal Remedies Act (CLRA) (Civ. Code, §§ 1750-1784), the Automobile Sales Finance Act (Civ. Code, §§ 2981-2984.6), the unfair competition law (UCL) (Bus. & Prof. Code, §§ 17200-17210), the Song-Beverly Consumer Warranty Act (Civ. Code, §§ 1790-1795.8), and Public Resources Code section 42885. He alleged that Valencia had (1) made false representations about the car’s condition, (2) failed to itemize separately the amount of the down payment that was deferred, (3) failed to distinguish registration, transfer, and titling fees from license fees, (4) charged an optional electronic filing fee without discussing it with him, (5) charged new tire fees for used tires, and (6) required payment of $3,700 to have the car certified so he could qualify for a 4.99 percent interest rate, when that payment was actually for an optional extended warranty unrelated to the interest rate.
Valencia moved to compel arbitration pursuant to a provision in the contract that provided in relevant part: “Any claim or dispute, whether in contract, tort, statute or otherwise . . . between you and us . . . which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship . . . shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. . . . Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action.”
Sanchez opposed the motion, principally asserting that the arbitration provision was illegal and unenforceable insofar as it required him “to waive *926 bis unwaivable right to file a class action under the CLRA.” The unenforceability of this waiver, he argued, rendered the entire arbitration agreement unenforceable under a clause stating, “If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable.” As an alternative ground for opposing the motion, Sanchez argued that the arbitration agreement was unenforceable because it was “both procedurally and substantively unconscionable.”
Based solely on the invalidity of the class arbitration waiver, the trial court denied the motion to compel, explaining; “As the CLRA contains a right to bring class actions, a waiver of such right is contrary to- public policy and is unenforceable. [Citation.] Thus, the class action waiver herein is unenforceable. As such, the entire clause is unenforceable, as specifically provided for in that clause.” The trial court did not address Sanchez’s unconscionability claim.
The Court of Appeal affirmed, but took the opposite approach, i.e., it declined to consider whether the class arbitration waiver was unenforceable and held instead that “the arbitration clause as a whole is unconscionable.” It is “procedurally unconscionable,” the court reasoned, “because it is adhesive and satisfies the elements of oppression and surprise; it is substantively unconscionable because it contains harsh terms that are one-sided in favor of the car dealer to the detriment of the buyer.” “First, a party who loses before the single arbitrator may appeal to a panel of three arbitrators if the award exceeds $100,000. Second, an appeal is permitted if the award includes injunctive relief. Third, the appealing party must pay, in advance, ‘the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs.’ Fourth, the provision exempts repossession from arbitration while requiring that a request for injunctive relief be submitted to arbitration. Although these provisions may appear neutral on their face, they have the effect of placing an unduly oppressive burden on the buyer.”
Discussion
I. The FAA Requires Enforcement of the Class Arbitration Waiver.
In Discover Bank v. Superior Court (2005) 36 Cal.4th 148, 161 [30 Cal.Rptr.3d 76, 113 P.3d 1100] (Discover Bank), a four-to-three majority of this court held that certain waivers of classwide arbitration procedures are unconscionable and unenforceable because they “may operate effectively as exculpatory contract clauses that are contrary to public policy.” This rule, the Discover Bank majority concluded, is not preempted by the FAA because (1) *927 enforcement of arbitration provisions under the FAA “is limited by certain general contract principles ‘ “at law or in equity for the revocation of any contract” ’ ” (36 Cal.4th at p. 163), and (2) “the principle that class action waivers are, under certain circumstances, unconscionable as unlawfully exculpatory is a principle of California law that does not specifically apply to arbitration agreements, but to contracts generally,” i.e., “it applies equally to class action litigation waivers in contracts without arbitration agreements as it does to class arbitration waivers in contracts with such agreements” (id. at pp. 165-166). The Discover Bank majority found “[njothing in” the high court’s decisions “suggesting] that state courts are obliged to enforce contractual terms even if those terms are found to be unconscionable or contrary to public policy under general contract law principles.” (Id. at p. 166.) In other words, the Discover Bank majority declared, “the FAA does not federalize the law of unconscionability or related contract defenses except to the extent that it forbids the use of such defenses to discriminate against arbitration clauses.” (Id. at p. 167.)
In Concepcion, the high court rejected the Discover Bank majority’s preemption analysis and held that the FAA does, in fact, preempt Discover Bank’s rule against enforcement, on grounds of unconscionability, of class arbitration waivers. (Concepcion, supra, 563 U.S. at pp. 352-353 [131 S.Ct. at p. 1753].) The court explained that, under certain circumstances, the FAA’s preemptive effect “extend[s] even to grounds” “normally thought to be generally applicable, such as . . . unconscionability.” (563 U.S. at p. 341 [131 S.Ct. at p. 1747].) The FAA preempts such “generally applicable contract defenses” if they “stand as an obstacle to the accomplishment of the FAA’s objectives.” (563 U.S. at p. 343 [131 S.Ct. at p. 1748].) The Discover Bank rule stands as such an obstacle for two reasons. First, it contravenes the FAA’s “ ‘principal purpose,’ ” which “is to ‘ensur[e] that private arbitration agreements are enforced according to their terms.’ [Citations.]” (563 U.S. at p. 344 [131 S.Ct. at p. 1748], italics added.) Second, it frustrates the FAA’s goal of encouraging “efficient, streamlined,” speedy procedures. (563 U.S. at p. 344 [131 S.Ct. at p. 1749].) Because, in these respects, the Discover Bank rule “ ‘stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,’ ” the FAA preempts it. (563 U.S. at p. 352 [131 S.Ct. at p. 1753].) As the majority explains, under Concepcion, the FAA “requires enforcement” of the class arbitration waiver at issue in this case. (Maj. opn., ante, at p. 907.)
Although I also agree with the majority that, under Concepcion, unconscionability remains a valid defense to a petition to compel arbitration (maj. opn., ante, at p. 912), I do not subscribe to the majority’s broad dictum that Concepcion “does not limit the unconscionability rules applicable to other provisions of the arbitration agreement” (maj. opn., ante, at p. 907). Indeed, as the majority later explains, under Concepcion, in order to avoid FAA *928 preemption, our standard for unconscionability “must be . . . the same for arbitration and nonarbitration agreements.” (Maj. opn., ante, at p. 912.) In other words, “the application of unconscionability doctrine to an arbitration clause must proceed from general principles that apply to any contract clause. In particular, the standard for substantive unconscionability . . . must be as rigorous and demanding for arbitration clauses as for any contract clause.” {Ibid.) Moreover, Concepcion declares that, although “[sjtates remain free to take steps addressing the concerns that attend contracts of adhesion,” those steps “cannot. . . conflict with the FAA or frustrate its purpose to ensure that private arbitration agreements are enforced according to their terms.” (Concepcion, supra, 563 U.S. at p. 347, fn. 6 [131 S.Ct. at p. 1750, fn. 6].) Concepcion also declares that “[wjhen state law prohibits outright the arbitration of a particular type of claim,” the state law “is displaced by the FAA.” (Id. at p. 341 [131 S.Ct. at p. 1747].) The high court has subsequently made clear that this principle precludes courts from basing a finding of unconscionability on a state rule that precludes, as a matter of state public policy, arbitration of certain types of claims. (Marmet Health Care Center, Inc. v. Brown (2012) 565 U.S. _,_ [182 L.Ed.2d 42, 132 S.Ct. 1201, 1204].) These general principles from Concepcion do, in fact, “limit the unconscionability rules applicable to” provisions of arbitration agreements other than class arbitration waivers. (Maj. opn., ante, at p. 907.)
II. Sanchez Has Not Established Unconscionability.
Unconscionability has both a procedural and substantive element, and the party asserting the defense bears the burden of proving both by a preponderance of the evidence. (Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC (2012) 55 Cal.4th 223, 246-247 [145 Cal.Rptr.3d 514, 282 P.3d 1217] (Pinnacle); Engalla v. Permanente Medical Group, Inc. (1997) 15 Cal.4th 951, 972 [64 Cal.Rptr.2d 843, 938 P.2d 903] (Engalla).) Below, I explain my reasons for agreeing with the majority that Sanchez has failed to establish substantive unconscionability. Before that, I explain why I do not endorse the majority’s discussion of procedural unconscionability.
1. We need not decide, and the record fails to establish, procedural unconscionability.
Initially, it is both unnecessary and, on the state of the record here, improper under our case law to decide that the agreement was procedurally unconscionable. It is unnecessary given the majority’s conclusion, with which I agree, that the arbitration provision is not substantively unconscionable. (Maj. opn., ante, at p. 906.) Because, as explained above, a showing of both procedural and substantive unconscionability is required to render a contract unenforceable, a contract that is not substantively unconscionable is fully *929 enforceable regardless of procedural unconscionability. Given our unanimous conclusion regarding substantive unconscionability, “adherence to judicial restraint and economy counsels against an unnecessary detour into an analysis” of procedural unconscionability. (People v. Mosley (2015) 60 Cal.4th 1044, 1055, fn. 7 [185 Cal.Rptr.3d 251, 344 P.3d 788]; see Brown v. Wells Fargo Bank, N.A. (2008) 168 Cal.App.4th 938, 956 [85 Cal.Rptr.3d 817] [declining to consider procedural unconscionability given finding of no substantive unconscionability]; Crippen v. Central Valley RV Outlet (2004) 124 Cal.App.4th 1159, 1167 [22 Cal.Rptr.3d 189] (Crippen) [declining to consider substantive unconscionability given finding of no procedural unconscionability].)
It is improper to decide the issue because, as explained earlier, the trial court made no findings regarding unconscionability and denied Valencia’s motion to compel based solely on its conclusion that the class arbitration waiver constituted an illegal and unenforceable waiver of Sanchez’s “unwaivable right to file a class action under the CLRA.” Thus, the trial court has never resolved factual conflicts that must be resolved in Sanchez’s favor in order to warrant a finding of procedural unconscionability (discussed post). Our decisions establish that where a trial court fails to resolve factual conflicts that must be resolved in favor of a party who alleges that an arbitration provision is unenforceable, the proper course for an appellate court is to remand the case to the trial court to determine those factual issues, not to determine them itself in the first instance. (Engalla, supra, 15 Cal.4th at pp. 972-973; Rosenthal v. Great Western Fin. Securities Corp. (1996) 14 Cal.4th 394, 414 [58 Cal.Rptr.2d 875, 926 P.2d 1061].) Under these decisions, were a finding on procedural unconscionability necessary, the majority should remand for the trial court to consider the issue rather than resolve it in Sanchez’s favor in the first instance on appeal. The majority offers no explanation for departing from our precedents.
On the merits, the majority’s summary dicta is incomplete and unpersuasive. The only basis the majority offers for finding “some degree of procedural unconscionability” is the “adhesive nature of the contract.”[1] (Maj. opn., ante, at p. 915.) But the majority offers no independent legal analysis for establishing that the contract was adhesive, asserting instead that “Valencia does not dispute that the contract was adhesive . . . .” (Id. at p. 913.) It is true that Valencia’s counsel stated at oral argument that the contract was “adhesive in the sense that it is ... a form contract.” But the circumstance that a *930 contract is “standardized in form” does not alone establish adhesiveness. (Izzi v. Mesquite Country Club (1986) 186 Cal.App.3d 1309, 1318 [231 Cal.Rptr. 315] (Izzi); see Federico v. Frick (1970) 3 Cal.App.3d 872, 875 [84 Cal.Rptr. 74] [“nothing in the record provides] evidentiary support for th[e] conclusion” that “[t]he standard union employment contract before us” is “a contract of adhesion”].) The additional characteristics of adhesiveness are that the contract was drafted and imposed “ ‘by the party of superior bargaining strength’ ” (Graham v. Scissor-Tail, Inc. (1981) 28 Cal.3d 807, 817 [171 Cal.Rptr. 604, 623 P.2d 165]) “ ‘on essentially a “take it or leave it” basis without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing in the form contract’ ” (Victoria v. Superior Court (1985) 40 Cal.3d 734, 743 [222 Cal.Rptr. 1, 710 P.2d 833] (Victoria)).
At all levels of this litigation, Valencia clearly has disputed whether Sanchez has met his burden to prove by a preponderance of the evidence that these additional characteristics of adhesiveness are present. In the Court of Appeal, Valencia argued that the contract, although “a pre-printed form contract,” was “not a contract of adhesion” and that, as relevant to this issue, Sanchez had failed to show that he “had no realistic choice,” that he could not have “negotiate^] a contract term” had he attempted to do so, that “he was under any compulsion to finalize the purchase of a vehicle at any particular point in time,” that the car “was unique,” or that he could not have purchased it without agreeing to arbitration from either a private individual or from one of the other five Mercedes-Benz dealers “[w]ithin 25 miles of’ Valencia. Valencia made the same arguments in the trial court and asserted in its opening brief in this court that Sanchez had failed to satisfy his “burden of proof’ because he “made no showing that he could not negotiate the arbitration provision or that he lacked other alternatives, such as going to another dealer.” Thus, the record reflects that Valencia does, in fact, “dispute that the contract was adhesive” and that, as part of its argument, has emphasized both in the lower courts and “in this court” Sanchez’s failure to show he could not “have opted out of the arbitration agreement” or “negotiated a sales contract without an arbitration agreement.”[2] (Maj. opn., ante, at p. 914.)
Indeed, the majority’s discussion overlooks the legal significance of the fact that the burden of proof was on Sanchez to establish procedural unconscionability. Valencia’s asserted failure to “dispute” the contract’s *931 adhesive nature or to “contend in this court” that Sanchez could have obtained the car without accepting the arbitration agreement (maj. opn., ante, at p. 914), even if consistent with the record, does not substitute for evidence that satisfies Sanchez’s burden to establish procedural unconscionability. This is especially true given the procedural posture of this case, i.e., the trial court made no findings regarding unconscionability, and the majority is deciding the issue on appeal in the first instance.
The majority also overlooks the fact that case law strongly supports Valencia’s arguments. In Crippen, supra, 124 Cal.App.4th at page 1165, the Court of Appeal, in ordering enforcement of an arbitration agreement between a dealer and the purchaser of a motor home, rejected the argument that the agreement was “a contract of adhesion and therefore procedurally unconscionable” simply “because [it] was a form contract [the dealer] used with many customers.” The court explained: “[T]here is no general rule that a form contract used by a party for many transactions is procedurally unconscionable. Rather, ‘[procedural unconscionability focuses on the manner in which the disputed clause is presented to the party in the weaker bargaining position. . . .’ [Citation.] There is no reason in this case to conclude that plaintiff lacked power to bargain. In general, nothing prevents purchasers of . . . vehicles from bargaining with dealers, even though dealers use form contracts, and nothing in the record shows that plaintiff could not bargain in this case.” (Id. at pp. 1165-1166.) “There is nothing in this buyer-seller relationship from which we can infer a great disparity of bargaining power.” (Id. at p. 1166; cf. Izzi, supra, 186 Cal.App.3d at p. 1318 [although the contract was standardized, “no presumption is warranted that plaintiffs had no choice or power to negotiate as to the terms of their purchase agreement or that they could not obtain comparable or superior terms on a suitable condominium nearby”].)
Indeed, the record here is consistent with the analysis in Crippen and supports Valencia’s arguments. It indicates that Sanchez had significant financial means when he signed the contract, which is the relevant time for judging unconscionability (Civ. Code, § 1670.5, subd. (a)). He contracted to pay nearly $50,000 for a luxury automobile for personal use, traded in a relatively new (four-year-old) luxury automobile as part of the purchase and, at the time he signed the contract, wrote a $10,000 check for the down payment and agreed to put down more money within 30 days if necessary. Over the course of the next week, he returned to Valencia and increased his down payment by $5,000, for a total of $15,000. The record also shows that Sanchez actually bargained for a substantial reduction in the car’s purchase price. Finally, the record contains evidence — submitted by Sanchez — that, during the time period when he executed the contract, contracts without an arbitration provision were available to Valencia’s buyers; that Valencia had not used contracts with arbitration clauses since August 29, 2008, a few *932 weeks after Sanchez signed the contract; and that Valencia no longer uses contracts with arbitration clauses. Thus, the record fails to show that Sanchez lacked bargaining power or that he could not have obtained the car, either from Valencia or elsewhere, “ ‘except by acquiescing in the form contract.’ ” (Victoria, supra, 40 Cal.3d at p. 743.)
The majority’s response to my analysis — that “in the context of consumer contracts, we have never required’ a party asserting procedural unconscionability to “show it tried to negotiate standardized contract provisions” (maj. opn., ante, at p. 914, italics added) — is unpersuasive. Although we may never have required such proof, we have expressly stated that “freedom to choose whether or not to enter a contract of adhesion is a factor weighing against a finding of procedural unconscionability.” (Gentry v. Superior Court (2007) 42 Cal.4th 443, 470 [64 Cal.Rptr.3d 773, 165 P.3d 556].) Notably, the decision we cited in support of this statement — Dean Witter Reynolds, Inc. v. Superior Court (1989) 211 Cal.App.3d 758 [259 Cal.Rptr. 789] — involved “the context of consumer contracts” (maj. opn., ante, at p. 914), a circumstance we expressly acknowledged in our explanation of that decision: “agreement between brokerage house and sophisticated consumer of financial services that included a $50 termination fee on an IRA account was not unconscionable where competing IRA’s without the challenged fee were freely available” (Gentry, supra, at p. 470, italics added).
Indeed, Discover Bank, which the majority cites in support of its response, actually confirms the validity of this principle “in the context of consumer contracts.” (Maj. opn., ante, at p. 914.) There, a majority of this court stated that “when a consumer is given an amendment to its cardholder agreement in the form of a ‘bill staffer’ that he would be deemed to accept if he did not close his account, an element of procedural unconscionability is present.” (Discover Bank, supra, 36 Cal.4th at p. 160.) In making this statement, we relied on Szetela v. Discover Bank (2002) 97 Cal.App.4th 1094 [118 Cal.Rptr.2d 862], There, consistent with our precedents, the Court of Appeal stated that “[t]he availability of similar goods or services elsewhere may be relevant to whether the contract is one of adhesion . . . .” (Id. at p. 1100.) The court then explained that, on “the [particular] facts in the case,” this was “not the deciding factor” because of the “oppressive” manner in which the defendant had “imposed” the arbitration provision; the record showed that the consumer, who already had a “Cardholder Agreement” with the defendant, subsequently “received” an “amendment” imposing the arbitration provision “in a bill staffer” and “was told to ‘take it or leave it.’ His only option, if he did not wish to accept the amendment, was to close his account.” (Ibid.) The facts in Discover Bank were virtually identical. (Discover Bank, supra, at pp. 153-154.) The facts in this case are completely different. Thus, although Discover Bank is factually distinguishable, legally, it confirms that Sanchez’s *933 failure to show he was unable to obtain the car from Valencia or elsewhere without agreeing to arbitration is an important factor in determining procedural unconscionability.
Even more supportive of this conclusion is the other decision the majority cites in support of its response: Perdue v. Crocker National Bank (1985) 38 Cal.3d 913 [216 Cal.Rptr. 345, 702 P.2d 503], (Maj. opn., ante, at p. 914.) There, we considered the legal sufficiency of the plaintiff’s claim that the fee the defendant bank charged customers for returned checks was unconscionable. (Perdue, supra, 38 Cal.3d at pp. 920-921.) In addressing this question, we first reaffirmed the principle that the determination of procedural unconscionability “may turn on the absence of meaningful choice.” (Id. at p. 927.) In holding that the plaintiff had sufficiently stated a claim for relief, we then stressed that he had “alleged . . . that similar arrangements would be imposed by other banks.” (Id. at p. 927, fn. 12, italics added.) This “allegation[];” we explained, rendered “distinguish[able]” a decision in which a court had “reject[edj” a similar unconscionability claim because of the plaintiffs’ “ ‘fail[ure] to show that they were deprived of a meaningful choice of banks with which they could do business.’ ” (Ibid.) Thus, like Discover Bank, Perdue confirms the significance of Sanchez’s failure to show (or even allege) that he either tried to negotiate with Valencia or could not have obtained a similar car elsewhere without agreeing to arbitration.
Consistent with these precedents, our Courts of Appeal have, in rejecting claims of adhesiveness, relied in part on the absence of evidence that the complaining parties tried to negotiate the terms they were seeking to invalidate. (Spinello v. Amblin Entertainment (1994) 29 Cal.App.4th 1390, 1397 [34 Cal.Rptr.2d 695]; Union Bank v. Ross (1976) 54 Cal.App.3d 290, 296 [126 Cal.Rptr. 646] (Union Bank).) Thus, under existing California case law, Sanchez’s failure to show that he “tried to negotiate” the arbitration provisions (maj. opn., ante, at p. 914) is an important factor in determining whether he has established adhesivenesss. The majority’s contrary view, which is not supported by our precedents, effectively disapproves these decisions.
I also disagree with the majority that the statements of Valencia’s counsel at oral argument regarding the clarity of the contract are relevant. (Maj. opn., ante, at p. 914.) Counsel stated: “I think many people who are not legally trained don’t understand the vast majority of what is in this contract. My guess is that if you asked that dealer about everything other than the negotiable terms of price and interest they probably don’t understand that either, even though that language is required by statute.” Unlike the majority, I would not rely on counsel’s “guess” about these matters, which lacks any evidentiary support in the record. Indeed, the contract here clearly provided *934 for arbitration of “[a]ny claim or dispute . . . between” Sanchez and Valencia, and there is no reason Sanchez would have been unable to understand this had he read the contract. Moreover, if, as the majority asserts, Sanchez “did not read” the contract (maj. opn., ante, at p. 914), then under existing case law, he “may not,” in asserting adhesiveness, “properly argue that he did not give an ‘understanding consent’ ” (Union Bank, supra, 54 Cal.App.3d at p. 296). Finally, “[t]he general rule” in California, established now for over 100 years, “is that when a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents, and is estopped from saying that its provisions are contrary to his intentions or understanding.” (Smith v. Occidental etc. Steamship Co. (1893) 99 Cal. 462, 470-471 [34 P. 84].) For these reasons, the majority’s reliance on counsel’s “guess” during oral argument is misplaced.
In any event, our prior decisions establish that adhesiveness does not alone necessarily establish procedural unconscionability. In Pinnacle, the trial court, on grounds of unconscionability, refused to enforce against a condominium homeowners association an arbitration provision in the condominium’s covenants, conditions, and restrictions (CC&R’s). (Pinnacle, supra, 55 Cal.4th at p. 234.) It based a finding of procedural unconscionability on the fact that “the [ajssociation had no opportunity to participate in the drafting of’ the CC&R’s because they were recorded “before the [association was formed.” (Id. at p. 247.) We disagreed with the trial court’s conclusion, explaining: “That the . . . CC& R’s were drafted and recorded before the sale of any unit and without input from the [association was a circumstance dictated by the legislative policy choices embodied in the Davis-Stirling Act. . . . Thus, while a condominium declaration may perhaps be viewed as adhesive, a developer’s procedural compliance with the Davis-Stirling Act provides a sufficient basis for rejecting an association’s claim of procedural unconscionability.” (Id. at pp. 247-248, italics added, fn. & citations omitted.) Here, Valencia asserts — and Sanchez does not dispute — “that over 90% of the contract is statutorily dictated in both form and content” by the Automobile Sales Finance Act (Civ. Code, § 2981 et seq.). Therefore, as Valencia argues, under Pinnacle, the contract is not procedurally unconscionable even if it could “be viewed as adhesive.” (Pinnacle, supra, at p. 248.) This conclusion does not, as the majority suggests, depend on whether the arbitration agreement “was mandated by statute” (maj. opn., ante, at p. 914), because the arbitration agreement in Pinnacle was not statutorily required (Pinnacle, supra, at pp. 235-242; see Morris v. Redwood Empire Bancorp (2005) 128 Cal.App.4th 1305, 1320 [27 Cal.Rptr.3d 797] [“adhesion contracts” are “not always” procedurally unconscionable]).
California has a “strong public policy in favor of enforcing arbitration agreements.” (Broughton v. Cigna Healthplans (1999) 21 Cal.4th 1066, 1073 *935 [90 Cal.Rptr.2d 334, 988 P.2d 67].) “In keeping with [this] strong public policy . . . , any doubts regarding the validity of an arbitration agreement [must be] resolved in favor of arbitration.” (Samaniego v. Empire Today, LLC (2012) 205 Cal.App.4th 1138, 1144 [140 Cal.Rptr.3d 492]; Lhotka v. Geographic Expeditions, Inc. (2010) 181 Cal.App.4th 816, 821 [104 Cal.Rptr.3d 844].) Consistent with these principles, were it either necessary or appropriate to decide the issue, I would, for the reasons set forth above, find that Sanchez has failed to prove adhesiveness that supports a finding of procedural unconscionability.
2. Sanchez has not established substantive unconscionability.
“Civil Code section 1670.5, subdivision (a), authorizes a court, upon finding ‘as a matter of law’ that a ‘contract or any clause of the contract’ was ‘unconscionable at the time it was made,’ to ‘refiise to enforce the contract,’ to ‘enforce the remainder of the contract without the unconscionable clause,’ or to ‘so limit the application of any unconscionable clause as to avoid any unconscionable result.’ The official Assembly comment accompanying this section explains: ‘The basic test [of unconscionability] is whether, in the light of the general background and the needs of the particular case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. . . . The principle is one of prevention of oppression and unfair surprise [citation] and not of disturbance of allocation of risks because of superior bargaining power.’ (Rep. on Assem. Bill No. 510 (1979-1980 Reg. Sess.) 5 Assem. J. (1979-1980 Reg. Sess.) p. 9231, reprinted as Legis. Com. com., 9 West’s Ann. Civ. Code (2011 ed.) foil. § 1670.5, p. 74 (Official Comment).)” (Sonic-Calabasas A, Inc. v. Moreno (2013) 57 Cal.4th 1109, 1176 [163 Cal.Rptr.3d 269, 311 P.3d 184] (cone. & dis. opn. of Chin, J.) (commonly known as Sonic II).)
Consistent with these legislative pronouncements, in Pinnacle, we recently explained that “[a] contract term,” including an arbitration provision, “is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be ‘so one-sided as to “shock the conscience.” ’ ” (Pinnacle, supra, 55 Cal.4th at p. 246.) The “ ‘ “shock the conscience” ’ ” (ibid.) standard we applied in Pinnacle is the standard this court has been applying for well over 100 years. (E.g., Herbert v. Lankershim (1937) 9 Cal.2d 409, 475 [71 P.2d 220] [inadequacy of consideration must be “ ‘so gross as to shock the conscience and common sense of all men’ ”]; Boyce v. Fisk (1895) 110 Cal. 107, 116 [42 P. 473] [contract must be “ ‘grossly against conscience,’ ” and “ ‘the mere fact that the bargain is a very hard or unreasonable one is not generally sufficient. . .’ ”]; see Tarver v. State Bar (1984) 37 Cal.3d 122, 134 [207 Cal.Rptr. 302, 688 P.2d 911] [test for whether an attorney’s fee is unconscionable is whether it is “ ‘ “ ‘so exorbitant and wholly disproportionate to the services performed as to shock the conscience’ ” ’ ”].) It is *936 “derivative of the term ‘unconscionable.’ ” (California Grocers Assn. v. Bank of America (1994) 22 Cal.App.4th 205, 215 [27 Cal.Rptr.2d 396].) It is the standard we should continue to apply. I thus agree with the majority’s discussion insofar as it reaffirms the validity of the shock the conscience standard. (Maj. opn., ante, at p. 911.)
However, I part company with the majority insofar as it continues to endorse several alternative formulations for substantive unconscionability, i.e., overly harsh, unduly oppressive, unfairly one-sided. (Maj. opn., ante, at p. 913.) As the majority observes, this court has sometimes used these formulations instead of the shock the conscience standard. (Ibid.) This practice has generated confusion and uncertainty, because our lower courts have understood these different formulations as stating a lower standard for substantive unconscionability than “shock the conscience.” (Sonic II, supra, 57 Cal.4th at p. 1178 (cone. & dis. opn. of Chin, J.) [“our Courts of Appeal have consistently recognized [that] ‘shock the conscience’ is not . . . ‘synonymous with “unreasonable” ’ ”]; see Peng v. First Republic Bank (2013) 219 Cal.App.4th 1462, 1469 [162 Cal.Rptr.3d 545] [shock the conscience is “ ‘a higher standard’ ” than one-sided or overly harsh]; Gutierrez v. Autowest, Inc. (2003) 114 Cal.App.4th 77, 88 [7 Cal.Rptr.3d 267] (Gutierrez) [same].) Today, the majority declares that these alternative formulations “all mean the same thing” as “shock the conscience.” (Maj. opn., ante, at p. 911.) If that is true, then why not settle on the traditional “shock the conscience” test as the single formulation? Why perpetuate the uncertainty that arises from having multiple formulations?
The majority’s only answer — that adopting “shock the conscience” as the sole formulation somehow “would call into question” decisions in which we have used “other formulations” (maj. opn., ante, at p. 913) — is unpersuasive. If, as the majority states, those other formulations are not conceptually or practically different from, and mean the same thing as, “shock the conscience” (id. at p. 911), then why would adopting a single standard call any of our prior decisions into question? We could simply make clear that we are clarifying the law, without suggesting that our earlier cases were wrongly decided.
Moreover, maintaining multiple formulations is problematic for several reasons. First, although, as the majority recognizes, “[c]ommerce depends on the enforceability, in most instances, of a duly executed written contract” (maj. opn., ante, at p. 911), it also depends on “certainty and predictability” of enforcement (Phillippe v. Shapell Industries (1987) 43 Cal.3d 1247, 1269 [241 Cal.Rptr. 22, 743 P.2d 1279].) As we have explained, “[p]arties enter into contracts to allocate risks and to bring certainty, order, and predictability to their mutual relations. One of the principal aims of contract law is to assist *937 contracting parties in achieving this objective by making the outcome of legal disputes clear and predictable.” (Nedlloyd Lines B.V. v. Superior Court (1992) 3 Cal.4th 459, 494 [11 Cal.Rptr.2d 330, 834 P.2d 1148].) Having multiple formulations for determining whether a contract is substantively unconscionable, and therefore unenforceable, undermines the certainty and predictability that are vital to commerce.
Second, the need for a uniform standard is crucial in light of the FAA. As already explained, the FAA requires that our standard for unconscionability be “the same for arbitration and nonarbitration agreements,” i.e., that it be “as rigorous and demanding for arbitration clauses as for any contract clause.” (Maj. opn., ante, at p. 912.) However, as Valencia argues, “[i]f there are multiple unconscionability standards, then arbitration provisions may well be subjected, in practice, to a different standard than other contract provisions.” Indeed, this court first articulated the “unfairly one-sided” formulation specifically in the context of an unconscionability challenge to an arbitration provision (Armendariz v. Foundation Health Psychcare Services, Inc. (2000) 24 Cal.4th 83, 117 [99 Cal.Rptr.2d 745, 6 P.3d 669] (Armendariz)), and the formulation has since been used almost exclusively in that context. Notably, in Concepcion, the high court, immediately after explaining that “judicial hostility” towards arbitration has “manifested itself in ‘a great variety’ of ‘devices and formulas,’ ” observed “that California’s courts have been more likely to hold contracts to arbitrate unconscionable than other contracts. [Citations.]” (Concepcion, supra, 563 U.S. at p. 342 [131 S.Ct. at p. 1747].) Having multiple formulations lends substantial credence to the “loud chorus of courts and commentators” who assert that, contrary to the high court’s decisions, we are using unconscionability “as a ruse for a ‘new judicial hostility’ toward arbitration.” (Aragaki, AT&T Mobility v. Concepcion and the Antidiscrimination Theory of FAA Preemption (Apr. 26, 2012) 4 Y.B. Arb. & Med. 39, 60.)
Although the majority’s endorsement of multiple formulations is problematic for these reasons, several of its related comments are worthy of note. First and foremost is the majority’s statement, as noted above, that all of the alternative formulations “mean the same thing” as “shock the conscience.” (Maj. opn., ante, at p. 911.) Second, the majority emphasizes that “ ‘central’ ” to all of its formulations is that substantive unconscionability is more than just “ ‘ “a simple old-fashioned bad bargain.” ’ ” (Ibid.) Thus, “[a] party cannot avoid a contractual obligation merely by complaining that the deal, in retrospect, was unfair or a bad bargain.” (Ibid.) Instead, the party resisting contract enforcement must prove, and a court must find, “ ‘a substantial degree of unfairness beyond “a simple old-fashioned bad bargain.” ’ ” (Ibid.) A contractual term does not meet this test merely because it can be characterized as being “one-sided” or “ ‘giv[ing] one side a greater benefit.’ ” *938 (Maj. opn., ante, at pp. 910-911.) Moreover, one-sidedness is not unconscionable if it “ ‘ “provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need.” ’ ” (Id. at p. 912.) The majority’s endorsement of various alterative formulations must be understood in light of these statements.
I also part company with the majority insofar as its one-sidedness analysis focuses separately on each of the challenged provisions in isolation, rather than the parties.’ bargain as a whole. Our decisions establish that, in assessing a claim that a contract or a clause in a contract is unconscionable, a court must “examine the totality of the agreement’s substantive terms as well as the circumstances of its formation to determine whether the overall bargain was” so one-sided as to be substantively unconscionable. (Sonic II, supra, 57 Cal.4th at p. 1146, italics added.) As Valencia explains, “[t]here are trade-offs in every contract. Lien and security rights favor one party. Payment favors the seller; required delivery of goods favors the buyer. Notice and an opportunity to cure usually favor the party in the position to default. But these types of provisions are almost inevitably not unconscionable, because in the context of the transaction as a whole, they are fair and reasonable. . . . [¶] The same is true of arbitration provisions. They, too, must be evaluated as a whole. The provision itself may contain trade-offs, e.g., one side pays certain fees, the other side gains a measure of protection from outlier results, such that the entire provision needs to be examined based on its overall effect. And, even then the arbitration provision needs to be evaluated in the context of the overall transaction.”
Taking this approach, I conclude that the arbitration clause, viewed as a whole, is not substantively unconscionable under any of the formulations the majority endorses. As Valencia argues, the clause “is even-handed. It is well justified by the business realities of the buyer-dealer relationship and the threats posed by outlier results. ... It involves mutual tradeoffs and a rational relationship to the nature of automobile purchases in general and to the specific transaction at issue — the purchase of a $50,000 pre-owned luxury automobile.” “There is a balance of clauses. There is an opportunity for further arbitral scrutiny for outlier results. But given the nature of the disputes, that will be the exception, not the rule. And, further review works both ways; both buyers and dealers can seek review of outlier awards. Self-help remedies, such as repossession, that would be more often invoked by the dealer are excluded, but they are by definition outside even the litigation process; and comparable small claims remedies more likely invoked by the customer are also excluded. [¶] Finally, the dealer pays the buyer’s initial arbitration expenses, up to $2,500. Only if the buyer loses a first round and wants to seek further arbitral review does the buyer have to advance further arbitration expenses (the review arbitrators ultimately allocate expenses). That’s reasonable: That the party (buyer or dealer) losing the first *939 round has to bear the expense of the finality round is common sense and furthers the interests of formality. Indeed, that’s how the judicial system handles appeals — the appellant pays for the record on appeal and pays a higher fee than the respondent. [¶] And, in return, individuals get a speedy, cheaper, surer mechanism for resolving disputes.” I agree with this analysis and would hold that the arbitration provision, evaluated as a whole, is not substantively unconscionable.
Nevertheless, I also agree with the majority that each of the challenged provisions, considered individually, is not substantively unconscionable, although I do not endorse all of the majority’s reasoning. Regarding the provision allowing a second arbitration if the arbitrator’s award is either $0 or over $100,000, as noted above, this provision benefits both Valencia and Sanchez by protecting them in most cases from the cost of a second arbitration while offering both access to further review of extreme, outlier awards. Also mutually beneficial is the provision making grants, but not denials, of injunctive relief subject to a second arbitration. The Court of Appeal invalidated this provision based on the view that it benefits “only” Valencia because “the buyer, not the car dealer, . . . would be seeking preliminary or permanent injunctive relief.” But, as the majority correctly notes, “car sellers sometimes must seek an injunction in order to repossess a car from the buyer.” (Maj. opn., ante, at p. 917.) Thus, while it is true, as the majority observes, that injunctive relief may have a “broad impact” on Valencia by requiring it to “change its business practices” (ibid.), such relief also may have a substantial impact on buyers by forcing them to surrender their means of transportation. Accordingly, as Valencia argues, “both [parties] would benefit from a process that allows second-level review when their liberty is constrained by arbitral decisions requiring them to do or refrain from doing certain activities.” Because these provisions do not “inordinately benefit” Valencia, under our decisions, they are not “unconscionably one-sided” (Little v. Auto Stiegler, Inc. (2003) 29 Cal.4th 1064, 1075, fn. 1 [130 Cal.Rptr.2d 892, 63 P.3d 979] (Little)), regardless of whether Valencia is “more likely” (maj. opn., ante, at p. 917) or even “substantially more likely” to invoke them (ibid.).[3]
As my earlier discussion indicates, I also agree with the majority that there is “nothing unconscionable” about the provision exempting repossession from arbitration. (Maj. opn., ante, at p. 922.) Because, as the majority explains, this *940 self-help remedy is “outside of litigation,” there is nothing unconscionable about not making it subject to arbitration, which is a litigation substitute. (Ibid.) Moreover, as the majority also explains, the provision that preserves the parties’ ability to go to small claims court “likely favors the car buyer.” (Ibid.) Thus, the exclusion of repossession from arbitration is not unfair, one-sided, or unconscionable.
Regarding the costs of a second arbitration, I first note that the Court of Appeal erred in stating that provision in question requires the party requesting the second arbitration to pay filing fees and other arbitration costs “in advance.” The provision states that the requesting party “shall be responsible for” such fees and costs, but says nothing about the time of payment. The record otherwise provides no support for the Court of Appeal’s statement.[4]
Moreover, I agree with the majority that the record contains “no evidence” that, at the time Sanchez signed the contract, the cost of a second arbitration would be “unaffordable” to him. (Maj. opn., ante, at p. 921.) On the contrary, as earlier explained, the record indicates that Sanchez had significant financial means when he signed the contract. In addition, at that time, one of the organizations the contract authorized to conduct the arbitration had established a substantially reduced fee schedule “for consumer-related disputes” in order “to make arbitration costs reasonable for consumers” (AAA General Rules, rule 0-8, Administrative Fees) and had provided for reduction or elimination of administrative fees in cases of hardship.[5] Given these circumstances, the provision regarding the costs of a second arbitration does not support a finding of unconscionability.
*941 Although I agree with the majority that the provision is not unconscionable, I disagree with the majority’s analysis in several respects. The majority suggests that a finding of substantive unconscionability may be premised on a finding that the fee provision “would have a substantial deterrent effect in Sanchez’s case.” (Maj. opn., ante, at p. 920.) But deterrence is surely an important — and permissible — purpose of the provision. After all, at issue here are the costs of a second, de novo arbitration based on one party’s dissatisfaction with the results of the first. Moreover, the provision’s deterrent effect applies mutually to both parties; if Valencia is dissatisfied with an award and seeks a new arbitration, then it also is “responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs.” In order to promote finality and secure the cost benefits of arbitration, parties to an arbitration agreement may want to discourage each other from invoking a contractual right to a second, new arbitration. Indeed, litigants wanting to appeal in court face similar deterrence, as they are responsible for appellate filing fees and, if unsuccessful, the other party’s appellate costs. (Cal. Rules of Court, rules 8.25, 8.278(a).) Surely such mutual deterrence is permissible if, as the majority correctly states, “the arbitration agreement did not have to provide for an appeal” at all. (Maj. opn., ante, at p. 920.)
However, the majority continues, having provided for “an appeal,” the arbitration clause “may not structure the appeal process so that it unreasonably favors” Valencia. (Maj. opn., ante, at p. 920.) Under this analysis, the question should not be, as the majority suggests, whether the provision would substantially deter Sanchez from requesting a second arbitration- — which, as just explained, is one of its permissible and mutually applicable purposes — • but should be whether the level of deterrence “unreasonably favors” Valencia. (Ibid.) In other words, a finding of substantive unconscionability would, under the majority’s analysis, require determination of (1) the provision’s relative deterrent effect on Valencia and Sanchez — which, in turn, would require evidence of the provision’s deterrent effect at the time the contract was signed on both Valencia and Sanchez — and (2) whether the difference, if any, in deterrent effect was unjustified by “ ‘ “a legitimate commercial need” ’ ” (id. at p. 912) and established “ ‘a substantial degree of unfairness beyond “a simple old-fashioned bad bargain” ’ ” (id. at p. 911). In my view, this convoluted and complicated inquiry is unnecessary; that the provision might have a greater “ ‘ “deterrent effect” ’ ” (id. at p. 921) on one of the parties to this contract for a $50,000 luxury car does not render it one-sided or substantively unconscionable. Indeed, given, as noted above, that litigants wanting to appeal in court face similar deterrence — in that they are responsible for appellate filing fees and, if unsuccessful, the other party’s appellate costs — to the extent the provision would deter Valencia less than Sanchez from requesting a second arbitration, it “confer[s] no more of an advantage than *942 would be the case had the action been brought in court,” and thus is not unconscionable. (Little, supra, 29 Cal.4th at p. 1075, fn. 1.)
Moreover, the FAA preempts the majority’s rule insofar as it makes a “substantial deterrent effect” sufficient to establish substantive unconscionability. (Maj. opn., ante, at p. 920.) In American Express Co. v. Italian Colors Restaurant (2013) 570 U.S. _ [186 L.Ed.2d 417, 133 S.Ct. 2304, 2308-2311] (Italian Colors), the high court held that the FAA required enforcement of an arbitration clause notwithstanding uncontested proof that it would impose prohibitive costs on the plaintiffs suing under the federal antitrust laws. The plaintiffs, in resisting enforcement, relied on “a judge-made exception to the FAA” — known as “[t]he ‘effective vindication’ exception” — which allows federal courts to invalidate arbitration agreements “that prevent the ‘effective vindication’ of a federal statutory right.” (570 U.S. at p. _ [133 S.Ct. at p. 2310].) This exception, the high court explained, “finds its origin in the desire to prevent ‘prospective waiver of a party’s right to pursue statutory remedies,’ [citation]. That would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights. And it would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable. [Citation.] But the fact that it is not worth the expense involved in proving a statutory remedy does not constitute the elimination of the right to pursue that remedy. [Citation.]” (Id. at p._[133 S.Ct. at pp. 2310-2311], some italics omitted.) Under this binding precedent, if a cost provision does not impose fees that “make access to the forum impracticable” (ibid.), then the FAA precludes a court from invalidating it as unconscionable because of a subjective determination that it will, in a particular case, “have a substantial deterrent effect” on a party’s exercise of the right to request a second arbitration.[6] (Maj. opn., ante, at p. 920.)
I also disagree with the majority’s view that parties asserting unconscionability based on their inability to afford arbitration costs may satisfy their burden with evidence of their financial situation at the time a “ ‘dispute arises.’ ” (Maj. opn., ante, at p. 920.) As the majority correctly recognizes *943 (ibid.), a determination of unconscionability must be based on the circumstances that existed “at the time [the contract] was made” (Civ. Code, § 1670.5, subd. (a)), not on hindsight in light of subsequent events. (Setzer v. Robinson (1962) 57 Cal.2d 213, 217 [18 Cal.Rptr. 524, 368 P.2d 124]; Colton v. Stanford (1890) 82 Cal. 351 [23 P. 16].) Thus, in determining affordability, Sanchez must submit evidence showing, not what he (and, under the majority’s approach, Valencia) could afford when the dispute arose, but what he could have afforded at the time he signed the contract. The majority’s assertion otherwise “is contrary to statute.” (Parada v. Superior Court (2009) 176 Cal.App.4th 1554, 1583 [98 Cal.Rptr.3d 743].)
Finally, the majority’s analysis of the cost provision improperly blurs distinct grounds on which this court has relied in prior decisions to invalidate arbitration provisions: unconscionability, which is at issue here, and public policy, which is not. As the majority explains (maj. opn., ante, at p. 918), in Armendariz, supra, 24 Cal.4th at pages 110-111, this court held that “when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court.” However, contrary to what the majority’s discussion suggests, this holding was not based on unconscionability. Rather, it was based on the view that forcing employees to pay costs in arbitration they would not have to pay in court would be “contrary to public policy” (id. at p. 110) in that it would “effectively prevent[] them from vindicating” (id. at p. 107) unwaivable statutory rights established for a public reason (id. at pp. 100-101). (See Little, supra, 29 Cal.4th at p. 1084 [Armendariz’s rule “is derived from state contract law principles regarding the unwaivability of certain public rights.”].) Similarly, the discussion from Gutierrez on which the majority relies (maj. opn., ante, at pp. 919-920) addressed, not unconscionability, but whether contractual terms, by “undercutting] unwaivable state statutory rights,” “violate[d] the public policy underlying [those] rights” (Gutierrez, supra, 114 Cal.App.4th at pp. 94-95). “[T]he public policy and unconscionability defenses” this court has announced “are different in important respects. A public policy defense is concerned with the relationship of the contract to society as a whole, and targets contractual provisions that undermine a clear public policy, such as an unwaivable statutory right designed to accomplish a public purpose. [Citation.] Unconscionability is concerned with the relationship between the contracting parties and one-sided terms [citation], such that consent in any real sense appears to be lacking. Contracts can be contrary to public policy but not unconscionable [citation] and vice versa [citation].” (Sonic-Calabasas A, Inc. v. Moreno (2011) 51 Cal.4th 659, 686-687 [121 Cal.Rptr.3d 58, 247 P.3d 130] (Sonic I).) The majority loses sight of these differences in its discussion of Armendariz and Gutierrez.
*944 But there is another important reason for not applying Armendariz's categorical rule here, in addition to the fact that it is not based on unconscionability; under Italian Colors, the FAA preempts it. As earlier explained, the high court held in that case that the FAA required enforcement of an arbitration clause notwithstanding uncontested proof that it would impose prohibitive costs on the plaintiffs, thus preventing them from effectively vindicating their rights under the federal antitrust laws. (Italian Colors, supra, 570 U.S. at pp. _-_ [133 S.Ct. at pp. 2308-2311].) The effective vindication exception, the high court held, “perhaps” covers cost provisions that make access to arbitration “imprácticable,” but does not cover provisions that merely make a federal claim “not worth the expense” to prove. (Id. at p._[133 S.Ct. at pp. 2310-2311].) Armendariz's categorical rule is based, not on proof that arbitration would, in fact, be financially impracticable for a particular employee, but on the view that the mere “possibility” employees “will be charged substantial forum costs” in arbitration would “chillQ the exercise” of their statutory right. (Armendariz, supra, 24 Cal.4th at p. 110.) If, as Italian Colors holds, the FAA requires enforcement of an arbitration provision despite actual proof it would impose prohibitive costs, then surely it precludes courts from invalidating an arbitration clause based on the theoretical, unproven chilling effect of imposing “any type of expense that the [party resisting arbitration] would not be required to bear” in a court action.[7] (Armendariz, supra, 24 Cal.4th at p. 110.)
For the preceding reasons, I agree that Sanchez has failed to establish substantive unconscionability. I therefore concur in the judgment.

 The majority states that “Sanchez apparently did not read the entirety of his contract, including the arbitration clause” (maj. opn., ante, at p. 914), but it does not conclude that this circumstance contributes to a finding of procedural unconscionability. I agree. As the majority explains, “even when a customer is assured it is not necessary to read a standard form contract with an arbitration clause, ‘it is generally unreasonable, in reliance on such assurances, to neglect to read a written contract before signing it.’ ” (Id. at p. 915.)

 After stating at oral argument that the contract was “adhesive in the sense that it is ... a form contract,” Valencia’s counsel added: “I think that meets the definition of adhesive in California. But I think adhesive without more does not get. . . one unconscionability.” Unlike the majority (see maj. opn., ante, at p. 913), I do not, in the context of the entire record, view these additional statements as a basis for dispensing with a proper and complete analysis of adhesiveness.

 Although mentioning the public’s interest in injunctive relief, the majority notes that this case does not involve the “continued viability,” in light of Concepcion, of Broughton and Cruz v. PacifiCare Health Systems, Inc. (2003) 30 Cal.4th 303 [133 Cal.Rptr.2d 58, 66 P.3d 1157], in which a majority of this court held that the FAA permits California to prohibit arbitration of claims for injunctive relief under the CLRA and the UCL. (Maj. opn., ante, at p. 917.) That question is pending before us in McGill v. Citibank, N.A., (2014) 252 Cal.App.4th 753, review granted April 1, 2015, S224086.

 The contract gives Sanchez the option of having arbitration conducted by, and under the rules of, the American Arbitration Association (AAA), the National Arbitration Forum, “or any other organization that [he] may choose subject to [Valencia’s] approval.” There is no basis to conclude or assume that, at the time the contract was executed, the selected organization would have required advance payment of all filing fees and other costs. Indeed, although the AAA rules in effect in 2008 called for advance payment of certain costs (AAA, Commercial Arbitration Rules and Mediation Procedures (amend. & eff. Sept. 1, 2007) rules R-4(a)(ii), R-49, 0-8 (AAA General Rules); AAA, Consumer-Related Disputes: Supplementary Procedures (2005) rules C-2(a), C-2(e), C-8 (AAA Supplementary Rules)), they also provided for “defer[ral]” of this payment “in the event of extreme hardship on the part of any party” (AAA General Rules, rule R-49). As to other arbitration expenses, the rules made advance payment subject to the AAA’s discretion. (Id., rule R-52.)

 The AAA’s generally applicable rules provided: “The AAA may, in the event of extreme hardship on the part of any party, . . . reduce the administrative fees.” (AAA General Rules, rule R-49.) Its AAA Supplementary Rules for consumer-related disputes expressly incorporated Code of Civil Procedure section 1284.3, stating: “Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California.” (AAA Supplementary Rules, rule C-8.)

 Even under the view of the dissent in Italian Colors, the FAA would, for two reasons, preempt the majority’s rule. First, the effective vindication exception is inapplicable when a party “could feasibly vindicate” his or her claim in arbitration. (Italian Colors, supra, 570 U.S. at p._[133 S.Ct. at p. 2320] (dis. opn. of Kagan, J.).) A second arbitration is not infeasible merely because a cost provision has “a substantial deterrent effect” on a party’s decision to request a second arbitration. (Maj. opn., ante, at p. 921.) Second, concerns about enforcing “state law” do not even “implicate the effective-vindication rule. When a state rule allegedly conflicts with the FAA, [courts] apply standard preemption principles, asking whether the state law frustrates the FAA’s purposes and objectives. If the state rule does so — as ... in [Concepcion] — the Supremacy Clause requires its invalidation.” (Italian Colors, supra, 570 U.S. at p._[133 S.Ct. at p. 2320] (dis. opn. of Kagan, J.), final italics added.)

 For the same reasons previously discussed in connection with the majority’s substantial deterrence standard (ante, p. 942, fn. 6), even under the view of the dissent in Italian Colors, the FAA would preempt Armendariz’s prophylactic, categorical rule.